## III.  LEGAL ARGUMENT

### A.  Summary Judgment Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The party seeking summary judgment always has the initial responsibility of informing the Court of the basis for its motion and identifying those materials which he believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

A party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The nonmovant must go beyond the pleadings and, by affidavits or the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is some genuine issue for trial." *Smith v. Blue Cross Blue Shield, Inc.*, 894 F. Supp. 1463, 1467 (D. Kan. 1995).

The Facts in dispute must be "material to the outcome of the litigation," (*Id.* at 11.) and backed by evidence which would permit a "rational trier of fact to find for the non-moving party," (*Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Under Fed.R.Civ.P.56, "factual allegations in the pleadings of the party opposing the motion for summary judgment, if supported by affidavits or other evidentiary material should be regarded as true by the district court." *Burtnieks v. City of New York,* 716 F.2d 982, 983-84 (2d Cir. 1983); see *Musso,* 836 F.2d at 742-43; *First Nat'l Bank of Cincinnati v. Pepper,* 454 F.2d 626, 629 (2d Cir. 1972). All inferences to be drawn from the underlying facts contained in the affidavits, attached exhibits, and depositions must be viewed in the light most favorable to the party opposing the motion for summary judgment. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

Where a non-moving party responds with a showing there exist genuine issues, the Court cannot deny motions for summary judgment simply based upon a showing of their existence. *Knight v. United States Fire Ins. Co.,* 804 F.2d 9, 11-12 (2d Cir. 1986), cert denied, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

A finding of summary judgment is improper where evidence on the record allows a reasonable inference to be drawn in favor of the non-moving party on a material issue of fact.

**IV. SUMMARY JUDGMENT SHOULD BE DENIED TO OXFORD HEALTH PLANS, INC. ON COUNTS FIVE AND SIX FOR REASONS OF PLAINTIFF MEDVEY'S BONA FIDE DISABILITY WITHIN THE MEANING OF THE AMERICANS WITH DISABILITIES ACT AND THE REHABILITATION ACT.**

### A. Plaintiff States A *Prima Facie* Claim Within The Americans With Disabilities Act And The Rehabilitation Act.

The American with Disabilities Act prohibits covered employers from discriminating "against a qualified individual with a disability because of the disability." 42 U.S.C. Sec. 12112(a). To establish a *prima facie* case under the ADA, a plaintiff must show (1) that defendants are subject to the ADA; (2) that the plaintiff suffers from a disability within the meaning of the ADA; (3) that the plaintiff could perform the essential functions of her job with or without reasonable accommodation; and (4) that the plaintiff suffered an adverse employment action because of his or her disability.[1] See *Reeves v. Johnson Controls World Servs., Inc.*, 140 F.3d 144, 149-50 (2d Cir. 1998).

1. Defendant makes no argument as to its subject to ADA.

Defendant, Oxford Health Plans, Inc., is an employer as defined by Sec. 1630.2(e), and is therefore subject to the terms and conditions of 42 U.S.C. Sec. 12112(a).

2. Plaintiff suffers from a disability within the meaning of the ADA.

In order to establish the second prong of her *prima facie* case, Plaintiff must establish that "a physical or mental impairment . . . substantially limits one or more of [her] major life activities." 42 U.S.C. Sec. 12102(2).

---

[1] The elements of a *prima facie* case under the ADA are the same as the elements under the Rehabilitation Act. *Cino v. Sikorsky et al.*, 42 F.Supp. 2d 147, 150n. 1(D.Conn. 1998) (citation omitted). The ADA and the Rehabilitation Act can be used interchangeably. *Id.*

A three-step process determines whether a plaintiff has such a disability. *Bragdon v. Abbott*, 524 U.S. 624, 631, 118 S. Ct. 2196, 141 L.Ed. 2d 540 (1998). First, it must be determined whether the plaintiff has a physical or mental impairment. *Id.* at 631, 118 S. Ct. 2196. Second, the court must decide whether the life activity upon which the plaintiff relies is actually a major life activity under the ADA. *Id.* Thirdly, the court must determine whether the impairment is a substantial limitation upon the major life activity. *Id.*

Plaintiff Medvey claims (a) a mental impairment, (b) to a major life activity (c) substantially limiting in effect.

a. <u>Plaintiff has both mental and physical impairment.</u>

Medvey has been diagnosed, repeatedly, as suffering from the effects of a severe automobile accident, since 1987: "The auto accident on June 17, 1987 left [Medvey] with physical and neurological limitations," including "physical disability from herniated discs in her neck and soft tissue injury," "symptoms of Post Traumatic Shock Syndrome," and "Traumatic Brain Injury." Facts, <u>supra</u>, p. 15. Medvey "has not fully recovered physically or emotionally from the events commencing with the accident of 1987." *Id.*

b. <u>Plaintiff's impairment is to her major life activities.</u>

"Major" means that the activity must be "of central importance to daily life." *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184, 195, 198, 122 S. Ct. 681, 690-91, 151 L.Ed. 2d 615 (2002). The EEOC includes in its examples of major

– 22 –

life activities "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. Sec. 1630.2(i).

As a result of her Accident, Medvey has a demonstrated impairment of a major life activity. All of Medvey's activity is affected in some way by the injury as " . . . her ability to return to a stable physical and emotional state was greatly diminished . . .." Facts, supra, p. 15.

Claims that Medvey participates in a variety of activity, "exercised, walked, swam, watched movies and television, read, played bridge, and engaged in use of her personal computer," or "played tennis and golf," accompanying family on weekend getaway "vacations" and has "driven [thousands of] miles per year," (Def. Facts, p. 10) show only that she has not completely withdrawn from life but rather support the premise she is not totally debilitated. She has never made a claim of total disability but rather a suffering from the effects so as to "substantially limit" her in one, or more, of her major life activities, as required under *Bragdon*.

The EEOC includes in its examples of major life activities "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. Sec. 1630.2(i).

The facts here indicate clearly Medvey suffers the effects of her injury on functions of (1) caring for herself – she has required the assistance of a housekeeper, (Facts, supra, p. 3.); (2) performing manual tasks – she has bouts where her seeing and hearing are diminished, (Facts, supra, p. 12.); and, working – she requires accommodation for the

disability and when not directly available, she self accommodates in ways that are not necessarily evident – limiting her hours and working at a pace comfortable to her.  Facts, supra, p. 3.

Plaintiff Medvey has a demonstrated impairment where the major life activity is working.

In a reliance on *Sutton*, a case appropriate for determination of the doctrine it establishes, Oxford argues Medvey alleges only that she is unable to perform the essential functions of one type of position – one requiring computer work involving multiple screens and movement.  Facts, supra, p. 6, 15.  Oxford asserts there is no substantial limitation in Medvey's "major life activity of 'working'" as she is not, at a minimum, "unable to work in a broad class of jobs," as prescribed in *Sutton*.

In *Sutton*, a claim of substantial limitation to the major life activity of working, for reasons of diminished eyesight, was barred because corrective measures, restorative of defendant's sight to levels free of impairment, were available.  In *Sutton*, defendant's allegation of significant restriction in their ability to perform either a class of jobs or a broad range of jobs was negated in that the position they sought, global airline pilot, was a single job and other "pilot" positions were available to them.  The court in *Sutton* also rejected the argument that the defendants were substantially limited in their ability to find similar employment at other like employers having similar requirements.  Unlike *Sutton*, Medvey's disability is not corrected by putting on eyeglasses, nor by Medvey applying for a position making use of multi-screen computer programs at another business or elsewhere

– 24 –

within the Oxford employment structure. Medvey suffers the chronic effects of a traumatic

brain injury that has manifested itself so as to limit her ability to use a computer in a

competitive, profit making, business paced environment, no matter the employer, nor the

job position. Facts, supra, p. 4, 6, 14. Medvey is unable to perform, as indicated by

Doctors Brown, Lesser and Rabinowitz, in the realm of moving multi-screened computer

programs – not just any computer system operation. Facts, supra, p. 3. While this

precludes Medvey from certain classes of employment and positions at all employers, it

does not preclude from her from other employment positions at any employer. Facts,

supra, p. 6. Medvey's limitation is not corrected by providing her with Sutton's glasses.

Facts, supra, p. 16.

   c. <u>Plaintiff's impairment is substantially limiting to her major life activities.</u>

   A claimant must show that the impairment substantially limits a major life activity.

*Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184, 195, 198, 122

S. Ct. 681, 690, 151 L.Ed. 2d 615 (2002).

> According to the EEOC's regulations, "substantially limit[ed]" means "[u]nable to
> perform a major life activity that the average person in the general population can
> perform;" or "[s]ignificantly restricted as to the condition, manner or duration
> under which an individual can perform a particular major life activity as compared
> to the condition, manner, or duration under which the average person in the general
> population can perform that same major life activity." 29 CFR Sec. 1630.2(j)
> (2001).

*Id.* at 195-96, 122 S. Ct. at 690.

Medvey is limited, unlike as is typical for non-impaired individuals, where driving or

riding as a passenger in an automobile is involved. Facts, supra, p. 6, 12. Medvey has had

to rely on a housekeeper for assistance with household chores. Facts, supra, p. 3. Medvey is limited by the effects to her eyesight. Facts, supra, p. 9, 12. She suffers diminished cognition and reduced concentration and reading and memory problems induced with symptoms of dizziness and vertigo. Facts, supra, p. 7, 14.

Finally, Defendant argues under the ADA "[a] person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482-83, 119 S. Ct. 2139, 2146-47 (1999). Defendant concludes, by virtue of Medvey indicating episodes of her Condition could usually be alleviated with a very small "prophylactic" dose of valium (Def. Facts, p. 11), her condition does not rise to the level necessary for disability under the ADA. Nothing can be further from the truth. Medvey is not a doctor. Facts, supra, p. 2. Facts supra. Her condition may seem to respond to self medication but the truth is, her condition is permanent and without remedy. Facts, supra, p. 15, see letter of Dr. Brown. Medvey has suffered the effects of her injury for some 17 years since the date of her Accident. Facts, supra, p. 2.

3. <u>Plaintiff could perform the essential functions of her job with or without reasonable accommodation.</u>

Prior to her injury of 1987, and the condition thereof, Medvey was fully functioning, married with children, and working in a variety of positions commensurate with her knowledge, skills and abilities. Facts, supra, p. 2. Subsequent to the injury, and during her employment at Oxford, Medvey proved herself to be a productive employee

– 26 –

when placed, by Oxford in a position such as the Issues and Resolution Department ("IRD"), which accommodated her disability while utilizing her knowledge, skills and abilities – including her computer skill - to the full extent she could provide them, without exposing her to the conflict created by requiring her to use multiple, moving computer screens while engaged with a headset taking calls from the queue. Facts, <u>supra</u>, p. 5, 7. Medvey was praised by her supervisors (Facts, <u>supra</u>, p. 7.), supported for accommodation by her supervisors (Facts, <u>supra</u>, p. 9, 17), and, found of sufficient enough value by Oxford for it to consider making re-employment offers to her. Facts, <u>supra</u>, p. 17.

Plaintiff satisfies the third prong of the test for determining a *prima facie* case, in that she is able to perform the essential functions of a job with or without reasonable accommodation. Facts, <u>supra</u>, p. 16. Medvey has performed a variety of jobs, over the course of her working years, which require the use of a computer, including positions at Oxford. Facts, <u>supra</u>, p. 2. She has successfully performed these duties. Facts, <u>supra</u>, p. 5. The question is not whether Medvey can perform the essential functions, but rather is it in her, and the employer's, best interest to continue to do so. Medvey performed the duties but became ill when she did, and asked for accommodation as a result. Facts, <u>supra</u>, p. 4.

Defendant further relies upon a narrow interpretation of EEOC Enforcement Guidelines, "An employer never has to reallocate essential functions as a reasonable accommodation," <u>EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act</u>, October 17, 2002, Job Restructuring Section, in arguing Oxford had no responsibility to accommodate Medvey. Inapposite,

– 27 –

Plaintiff has not requested any reallocation of the essential functions of a job. She merely pointed out other positions would be more accommodating to her existing and chronic Condition. Facts, supra, pp. 7-8, 17-18.

Defendant alleges Medvey failed to meet her burden with respect to identifying and demonstrating her qualifications for other positions at Oxford as portrayed by *Lester v. Natsios.*

> [P]laintiff's burden to identify available positions and to demonstrate that she was qualified . . .. Plaintiff has offered no evidence that other positions were available that would reasonably accommodate her . . .. Defendant has produced evidence [of] a hiring freeze . . . and that defendant did make good faith attempts and even offered plaintiff a [different position] that she declined.

*Lester v. Natsios*, 290 F. Supp. 2d 11, 25-26 (D.D.C. 2003).

Here, Medvey did indicate the availability of other more suitable positions for which she was qualified, such as the Issues Resolution position (Facts, supra, p. 17.) and jobs from the postings made available to her. Facts, supra, pp. 7-8, 17-18. Facts, supra, p. 15. In response to Defendant's portrayal of Medvey as having not identified during her employment any reasonable accommodation that Oxford could have made and which would have allowed her to accomplish the essential job functions, Medvey asserts she was qualified to fill a variety of jobs which made use of a computer and her skills without exposing her to the fast paced multiple computer screens of the DSM position with which she struggled. Oxford clearly understood such options existed as she was told by her instructor supervisor that such an option would be available after three months of this customer service work. Facts, supra, p. 4.

- 28 -

In alleging she is unable to work in a broad class of jobs, (*Sutton v. United Airlines, Inc.*, 527 U.S. 471, 491, 119 S.Ct 2139, 144L.Ed.2d 450 (1999).), Medvey points to the fact she is limited by her disability, and therefore, "unable to perform the essential functions of one type of position," (*Sutton*), - any position that requires computer work involving multiple moving computer screens and headsets. Facts, supra, pp. 4-5.

Medvey, out of fear of losing employment opportunities, did not request accommodations, and at times covertly implemented self accommodations in subsequent employment opportunities. Facts, supra, p. 5. While it is true, as Defendant alleges, she has been continuously employed since leaving Oxford; her employment has always been supported with some form of accommodation for her disability. Facts, supra, p. 3.

Prior to employment at Oxford, subsequent to her Accident, Medvey suffered from the effects of her condition at each employment opportunity along the way. While employed as a caregiver to a terminally patient under hospice care her "physical stamina was affected." Facts, supra, p. 3. Medvey accommodated her disability – she was "able to pace my work," and "wasn't pressured" nor working under "time constraints." Facts, supra, p. 3. There were occasions where she complained of becoming "over stimulated," and, found the "pressure" as "fatiguing." Facts, supra, p. 3. Medvey made self accommodations for her impairment that allowed her to remain productive and continued to benefit her employer with her productivity by way of controlling the circumstances of her work and pacing herself with the work of those duties that most significantly triggered her symptoms. *Id.*

– 29 –

Medvey sought reasonable accommodations at Oxford. She applied for open positions and expressed a preference for the IRD position. Facts, <u>supra</u>, p. 7. When assigned as a DGM she sought accommodation by requesting a change in assignment from her training instructor and indicated this was not the job she expected. Facts, <u>supra</u>, p. 4.

The DGSA job with its requirements of headsets and queues, was "overwhelming." Facts, <u>supra</u>, p. 15. Her only way to maintain herself in the job and to quell her feelings of physical illness was by self medicating herself as recommended by Dr. Brown. Facts, <u>supra</u>, p. 15. She sought alternatives to leaving Oxford by seeking positions in other departments. Facts, <u>supra</u>, pp. 4, 8.

4. <u>Plaintiff suffered an adverse employment action because of her disability.</u>

Defendants argue Plaintiff Medvey suffered no adverse employment action and relies upon the financial difficulties of Oxford Health Plans as reason for its lack of accommodation to Plaintiff.

Medvey claims Oxford did not take seriously its requirements to accommodate her for reasons of a bona fide disability as defined under the Americans with Disabilities Act. Medvey suffered the ultimate adverse employment action by way of Oxford's termination of her in November 1999. Facts, <u>supra</u>, p. 18.

Medvey satisfies the requirements for finding she was disabled within the meaning of the Americans with Disabilities Act and the Rehabilitation Act, in that Oxford is subject to the Act, she is a qualified individual with a disability capable of performing the essential

– 30 –

functions of her job, and after identifying reasonable accommodations available to her

suffered from the ultimate adverse employment action – termination.

**V.  A GRANT OF SUMMARY JUDGMENT IS NOT APPROPRIATE FOR COUNT
FOUR IN THAT MEDVEY WAS DISCHARGED BY OXFORD WHILE
SUFFERING A DISABILITY AND A CHRONIC HANDICAP, INFIRMITY OR
IMPAIRMENT AS REQUIRED BY CONN. GEN. STAT. SEC.46a-60(a)(1).**

An employer may not discriminate against any individual because of the

individual's physical disability. Connecticut Fair Employment Practices Act ("CFEPA"),

Conn. Gen. Stat. Sec 46a-60(a)(1).

In concluding Medvey suffered no discrimination under CFEPA, Oxford points to

the test provided by *McDonnell Douglas-Burdine, (Ann Howard's Apricots Rest., Inc. v.*

*Comm'n on Human Rights and Opportunities,* 237 Conn. 209,224-25, 676 A.2d 844

(Conn. 1996)) in that Medvey need only show, by a preponderance of the evidence, that

(1) she was a member of a protected group; (2) that she applied and was qualified for the

position in question; (3) that despite her qualifications, she was rejected, i.e., she suffered

an adverse employment decision; and (4) that after she was rejected, the position remained

open. *Levy v. Commission on Human Rights and Opportunities,* 236 Conn.96, 107-08

(Conn. 1996).  The fourth prong is sometimes analyzed as: (4) the adverse employment

decision occurred under circumstances which give rise to a reasonable inference of

discrimination. *Shaw v. Greenwich Anesthesiology Assocs.,* 137 F.Supp. 2d 48, 64-65

(D.Conn. 2001).

– 31 –

The facts in existence support that Medvey satisfies the four prongs as required to form a *prima facie* case.

### A. Plaintiff Medvey Suffers a Disability Within the Meaning of Connecticut General Statute Section 46a-51(15).

The first element of Medvey's *prima facie* case is satisfied. Medvey is physically disabled within the meaning of Conn. Gen. Stat. Sec. 46a-51 (15) which defines "[p]hysically disabled" as "refer[ring] to any individual who has any chronic physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic processes or changes or from illness, including, but not limited to, epilepsy, deafness or hearing impairment or reliance on a wheelchair or other remedial appliance or device."

Defendant takes the time to address the defining of "chronic" for purposes of applying it to a determination of whether Plaintiff is physically disabled within the meaning of Conn. Gen. Stat. Sec. 46a-51 (15).

In arriving at a definition for "chronic" Defendant appropriately points out "when left undefined by the legislature, '[t]he words of a statute are to be given their commonly approved meaning unless a contrary intent is clearly expressed.'" *Carothers v. Capozzielo,* 215 Conn. 82, 129 (Conn. 1990) (quoting *Kilpatrick v. Board of Education,* 206 Conn. 25, 28, 535 A.2d 1311 (Conn. 1998). Defendant continues with reliance on a definition provided by Black's Law for "chronic": "of long duration or characterized by slowly

– 32 –

progressive symptoms; deepseated or obstinate or threatening a long continuance, distinguished from acute." Black's Law Dictionary at 241-42 (6[th] ed. 1990).

Plaintiff offers it may be more appropriate to refer to the definition of "chronic" as is available by Webster's New World Medical Dictionary, given the intent of CFEPA 46a-60(a)(1) – to bar any individual from employment for reasons, *inter alia,* relating to issues of "physical" disability and impairment. "Chronic - An illness that persists for a long period of time. The term 'chronic' comes from the Greek chronos, time and means lasting a long time. A chronic illness is one lasting 3 months or more, by the definition of the U.S. National Center for Health Statistics. In ancient Greece, the 'father of medicine' Hippocrates distinguished diseases that were acute (abrupt, sharp and brief) from those that were chronic." Webster's New World Medical Dictionary Second Edition (2003).

The distinction in definitions appears subtle, but the significance is great as applied to Defendant's argument.

Medvey's condition, her physical disability, was chronic in that it lasted 3 months or more. It began in 1987 and persists to this date. Facts, supra, p. 2. While it is true, as Defendant asserts, her disability effects her work, it is as equally true it limits her in the totality of her life's activities. Facts, supra, pp. 11, 12. And, as well, although Defendant relies on Medvey having received satisfactory performance appraisals at work as providing support for concluding her "[c]ondition does not fit [the] definition [of chronic]," Defendant's Motion , pp. 24-25, there is no support for that reasoning, nor no facts to support, that conclusion. Medvey suffers a variety of chronic effects that cause her

– 33 –

Condition. Medvey has difficulty "seeing" in certain situations, i.e., when she is "symptomatic." Facts, <u>supra</u>, pp. 7, 9, 12. She has, on many occasions, been prevented from lengthy travel on car trips, as either a driver or a passenger, for reasons of dizziness and nausea and a state of vertigo. Facts, <u>supra</u>, p. 12. Medvey has limitations brought about by an inability to perform manual tasks, has problems walking, hearing, learning, lifting and working, and suffers reduced concentration and memory problems and word retrieval difficulties. Facts, <u>supra</u>, p. 7, 9, 12.

To claim Medvey's Condition is not chronic, by analysis of the facts of the individual situation as required by *Connor,* is disingenuous. To determine whether an impairment is a disability under CFEPA, courts must analyze the individual situation, as there are varying degrees of impairments as well as varied individuals who suffer from the impairments. *Connor v. McDonalds*, 2003 WL 1343259, *5 (D. Conn. 2003).

In its determination, Oxford maintains Medvey cannot satisfy her claim of protected status under Conn. Gen. Stat. Sec. 46a-51(15) by way of finding her condition should not be considered as chronic. Plaintiff's condition lasted for years - from at least 1987 to the present date. It continues to this day. See Plaintiff Ex. G, Letter of Harry J. Brown, M.D. Defendant claims Medvey's condition could not have been chronic because it was not "inveterate" i.e., resistant to treatment." *Caruso v. Siemens Business Systs., Inc.* 2003 WL 174791 (2d Cir. (Conn.) Jan. 23, 2003). Defendant asserts that Medvey's Condition responds to treatment. Therefore, Defendant concludes, she is not physically disabled, as she does not satisfy the first prong of the *prima facie* case. Defendant draws

– 34 –

from the facts a flawed hypothesis to arrive at some rather questionable conclusions. Whether Medvey's Condition responds to treatment is clearly in doubt. She has suffered her infliction for 17 years. Facts, <u>supra</u>, p. 2; Pl. Exh. G. Were there a cure for her ailment, it is reasonable to assume, rather than remaining afflicted, she would have sought after and taken it. Medvey's Condition is chronic, in that it is long in duration and persistent. *Id.* The sheer longevity of it, without remedy or relief, makes it chronic – and real.

### B. Plaintiff Medvey, After Informing Oxford Health Plans of Her Disability Was Rejected For Existing Positions at Oxford Health Plans.

The facts show that Plaintiff was aware of the existence of suitable vacancies into which she might have been transferred. *Irby v. New York City Transit Authority*, 2000 WL 1634413, *3 (S.D.N.Y. Oct. 30, 2000), and that she applied for a position to which she claims qualification (*Gambarbella v. Yale University*, 2003 WL 22133747, *3 (Conn. Super. Ct. Aug. 27, 2003) and for which she was rejected. (*Id.*).

Medvey sought appointment to a permanent position in the Issues and Resolution Department for which she was denied. Facts, <u>supra</u>, p. 8. She offered to work as a "runner" and was denied. Facts, <u>supra</u>, p. 10. She offered to work as a receptionist and was denied. Facts, <u>supra</u>, p. 10. She sought other positions from job postings she was sent. Facts, <u>supra</u>, p. 17.

There were a variety of positions available at Oxford, Medvey was denied all of them.

**C. Plaintiff Medvey By Virtue of Her Rejection by Oxford Health Plans Suffered An Adverse Employment Decision.**

Plaintiff was denied the accommodation of a suitable position for which she was qualified. Facts, <u>supra</u>. Medvey was ultimately terminated from the employ of Defendant without any notification of this action to her by employer Oxford. Facts, <u>supra</u>, p. 18

**D. Circumstances Present Give Rise To Finding A Reasonable Inference Of Discrimination.**

A *prima facie* case of discrimination may be established "indirectly by showing that the protected activity was followed closely by discriminatory treatment." *Johnson v. Palma*, 931 F.2d 203, 206-07 (2d Cir.1991). The facts in existence show Plaintiff was denied the accommodation of a suitable position for which she was qualified (Supra) and ultimately terminated from the employ of Defendant (Supra).

**E. Oxford Health Plans' Defense of Financial and Business Interests as Legitimating Its Actions is Not Plausible.**

Defendant proposes, as a defense to terminating Medvey, there exist legitimate, non-discriminatory reasons for its actions. *Levy v. Commission on Human Rights and Opportunities*, 236 Conn.96, 107-08 (Conn. 1996). Yet, in arguing "Oxford did not offer Medvey a position that did not require her to use the Computer System because the company did not have such a position available," for reasons the Company was downsizing is unsupported logic. Motion at III, E. Oxford did have positions available Medvey sought appointment to a permanent position in the Issues and Resolution

– 36 –

Department for which she was denied. Facts, supra, p. 8. She offered to work as a "runner" and was denied. Facts, supra, p. 10. She offered to work as a receptionist and was denied. Facts, supra, p. 10. She sought other positions from job postings she was sent. Facts, supra, p. 17.

An employer's decision to downsize, limit, and/or freeze hiring efforts is a legitimate, nondiscriminatory reason for not providing an employee with an alternative position. *Lester v. Natsios*, 290 F. Supp. 2d 11, 25-26 (D.D.C. 2003). While Defendant points to downsizing as an excuse for no position being available, which is untrue on its face as indicated, for Medvey showed a desire for several positions, it never offers any proof that Oxford was in fact downsizing. Medvey questions how a company that sent to her no less than 64 job postings (for 64 open positions it seeks to fill) in a sixty day period (July 5 through September 7, 2001) can argue it was "downsizing." Facts, supra, p. 17. In addition, Defendant, at no time, provided any tangible proof (financial statements, SEC reporting) indicative of any financial difficulty or concern which may have led it to any nondiscriminatory reason (downsizing, limiting, and/or freeze of hiring efforts) for not providing an Medvey with an alternative position.

### F. The Business Interest Decision Making Claim of Oxford Health Plans, Inc. Is Pretextual.

Medvey was terminated by Oxford without any direct notification to her that this was the action Oxford had chosen to take. Facts, supra, p. 18. For Oxford to claim its decision to terminate Medvey was for reasons of legitimate, non-discriminatory business

– 37 –

purposes is without support.  The facts show their intent to terminate Medvey was

ostensible, and therefore, professed in purpose.  Oxford denied Medvey alternative

employment options within the company (supra) after she made available to it an

overwhelming sufficiency of information describing her disability.  In spite of finding

Medvey, who they found to be a highly satisfactory employee, based upon consistently

favorable performance evaluations (Facts, supra, p. 5.), Oxford denied her reentry into the

workplace, (Facts, supra, p. 17-18.), and discarded her from employment.  Two years after

her last day of actual work, Oxford sent Medvey numerous job postings for job interview

purposes.  Facts, supra, p. 17.  The sheer number of open positions (supra) negates

Oxford's attempt to argue its reasoning for terminating Medvey was anything but,

pretextual.

Medvey satisfies the test as outlined in *McDonnell Douglas-Burdine*, (*Ann*

*Howard's Apricots Rest., Inc. v. Comm'n on Human Rights and Opportunities*, 237 Conn.

209,224-25, 676 A.2d 844 (Conn. 1996)) and as put forth in Sections V, A through F, of

this Memorandum of Law.  For these reasons, Summary Judgment should be denied with

regard to Count Four of the Amended Complaint.

## VI. A GRANT OF SUMMARY JUDGMENT IS NOT APPROPRIATE FOR COUNT SEVEN IN THAT MEDVEY WAS ENGAGED IN A PROTECTED ACTIVITY WHEN SHE SUFFERED THE ADVERSE EMPLOYMENT ACTION OF TERMINATION.

The ADA retaliation provision protects any person who opposes an act or practice made unlawful by the ADA or who participates in any manner in an ADA proceeding. 42 U.S.C. Sec. 12203. [2] In order to state a claim for retaliation under the ADA, a plaintiff must show that: (1) she engaged in an activity protected by the statute and known to the employer; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d. Cir. 1999).

### A. Plaintiff Was Engaged in Protected Activity Under ADA.

Medvey claims Oxford denied her rights available to her pursuant to Section 504 of the Rehabilitation Act [29 U.S.C. Sec. 794(a)] and the Americans with Disabilities Act, 42 U.S.C. Sec. 12101 *et seq.* Amended Complaint, Count Seven, Para. 38. Oxford denied Medvey a reasonable accommodation for her disability leading to a termination of her employment. *Id.* Para 37.

"[P]rotected activities under . . . the ADA . . . include . . . opposition by employees against an employer's discriminatory practices." *Sacay v. The Research Foundation of the*

---

[2] 42 U.S.C. Sec. 12203 (a): Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act.

– 39 –

*City University of New* York, 44 F.Supp.2d 505, 508 (E.D.N.Y.) 1999). Medvey
"opposed" Oxford's practices where issues of her seeking a reasonable accommodation for
disability were involved and the treatment of her by Oxford in denying her employment
after she took leave for reasons of her disability and a failure by Oxford to appoint her to a
position identified as a suitable accommodation for her disability.

Medvey consistently, repeatedly and persistently sought appointment to a position
capable of accommodating her inability to use multi-screened moving computer programs
while accepting calls through a headset and from a queue. Medvey sought appointment to
no less than three positions for which she was denied. She requested a permanent position
in the Issues and Resolution Department for which she was denied. Facts, <u>supra</u>, p. 8. She
offered to work as a "runner" and was denied. Facts, <u>supra</u>, p. 10. She offered to work as
a receptionist and was denied. Facts, <u>supra</u>, p. 10. She sought other positions from job
postings she was sent. Facts, <u>supra</u>, p. 17.

### B. The Actions of Oxford Health Plans, Inc. Was Adverse Employment Action Taken Against Plaintiff Medvey.

Medvey was denied various positions of employment after she made her disability
clearly known to Oxford. Subsequent to the denial of appointment to any position,
Medvey was terminated by Oxford without notice, and with no exit interview or concern
for her well being subsequent to her separation. Medvey lost income, the value of her
welfare benefits and the future benefit she may have realized from her employment with
Oxford.

**C. Plaintiff Claims A Causal Link Between The Protected Activity And Defendant's Adverse Employment Action.**

Oxford's repeated discriminatory practice of denying Medvey an accommodation for her disability by way of opposing her persistence in seeking appointment to a different position is a direct and causal link to her abrupt termination by Oxford.

## VI. CONCLUSION.

For all the aforementioned reasons, and pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, there exist genuine issues of material fact sufficient for finding in favor of Plaintiff, Patricia Ann Medvey in her opposition to Summary Judgment regarding Counts Four, Five, Six and Seven of the Amended Complaint dated May 21, 2002, and as sought by Defendant Oxford Health Plans, Inc.

Dated at Madison, Connecticut this 24th day of November 2004.

THE PLAINTIFF,
PATRICIA ANN MEDVEY

By: _____

Edmond Clark
83 Scotland Avenue
Post Office Box 133
Madison, CT  06443-0133
Telephone: (203) 245-4602
Facsimile: (203) 245-9734
E-Mail: Eclarkmadisonlaw@aol.com
Federal Bar No.  ct22396
Her Attorney.

– 41 –

## CERTIFICATION OF SERVICE.

This is to certify that a copy of the foregoing was sent via first class mail, postage prepaid, on this the 24th day of November 2004, to:

David J. Burke, Esq.
Robinson & Cole LLP
695 East Main Street
Stamford, CT  06901

and

David A. Kulle, Esq.
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT  06103-3597

_____
Edmond Clark