UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PATRICIA ANN MEDVEY, | : | CIVIL NO. 301CV1977(EEB) |
| Plaintiff, | : | |
| v. | : | |
| OXFORD HEALTH PLANS, INC., and METROPOLITAN LIFE INSURANCE COMPANY, | : | |
| Defendants. | : | MARCH 14, 2005 |

### DEFENDANT OXFORD HEALTH PLANS, INC.'S
### REPLY MEMORANDUM OF LAW IN
### SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Oxford Health Plans, Inc. ("Oxford") through its attorneys and pursuant to Rule 56 of the Federal Rules of Civil Procedure, and Local Rule 7(d), submits this Reply Memorandum of Law ("Reply") in support of its Motion For Summary Judgment as to all remaining claims of the plaintiff ("Plaintiff" or "Medvey").

### I.

### PLAINTIFF HAS FAILED TO MEET HER BURDEN WITH REGARD TO
### PROOF NECESSARY TO SUSTAIN HER CLAIMS UNDER THE
### AMERICANS WITH DISABILITIES ACT AND THE REHABILITATION ACT

In Section IV(A) of her Memorandum in Opposition to Oxford Health Plan's Motion for Summary Judgment ("Plaintiff's Opposition Memo"), Medvey says that she has stated a *prima facie* claim within the Americans with Disabilities Act and the Rehabilitation Act. Even if that statement is deemed correct by the Court, simply **stating** a *prima facie* claim does not satisfy Medvey's burden in opposing Oxford's motion for summary judgment. Under Rule 56(c) of the

Federal Rules of Civil Procedure, Medvey must offer evidence that goes "beyond the pleadings and, by affidavits or the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is some genuine issue for trial" (citing Smith v. Blue Cross Blue Shield, Inc., 894 F. Supp. 1463, 1467 (D. Kan. 1995)). Such evidence must be material to the outcome of the litigation, permitting a "rational trier of fact to find for the non-moving party." Plaintiff's Opposition Memo at 19, citing Matushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed. 2d 538 (1986). Thus, merely "stating" a *prima facie* claim is not sufficient to withstand a motion for summary judgment. Here, Medvey does little more than make such a statement, offering little or no supporting evidence.[1]

A.  **Medvey's Claim That She Has A Physical Disability From Herniated Disks Injects New Facts Into The Case That Were Never Shared With Oxford And Should Not Be Considered By This Court.**

Medvey's Condition[2] is described in her Complaint, in the Personal Profile she submitted to MetLife (see Oxford's Ex. 39), and at her deposition, as "brain dysfunction frontal lobe injury and visual disturbance ... sufficient in degree to preclude the necessary functioning for operating employer OHPI's [Oxford Health Plan, Inc.] multi-screen computer program processes." See

---

[1] In her Local Rule 56(a)2 Statement, Medvey admitted all but 20 of the 99 statements offered by Oxford in its 56(a)1 filing (hereafter "56(a)1Facts.") The remaining 20 paragraphs (3, 8, 10, 15, 27, 29-30, 33-34, 36, 42, 53, 61, 70-71, 75, 80, 84, 86, and 96) were simply "denied" by Medvey without the specific citations to affidavits or other evidence required by Local Rule 56(a)2. Therefore, these paragraphs should also be deemed admitted by Medvey, and/or, Oxford's Motion for Summary Judgment should be granted. Local Rule 56(a)2; see also Coan v. Kaufman, 333 F. Supp. 2d 14, 16 n. 1 (D. Conn. 2004); Martin v. Town of Westport, 329 F. Supp. 2d 318, 323 n. 1 (D. Conn. 2004). Moreover, Medvey has failed to comply with her obligations under Local Rule 56(a)(2), which requires her to provide the Court with a list of "each issue of material fact as to which it is contended there is a genuine issue to be tried." Instead, Medvey's Rule 56(a)(2) statement sets forth a list of legal conclusions or propositions. Such statements do not suffice to raise legitimate, genuine issues of material fact. Abramowitz v. Ogrinc, 2002 U.S. Dist. LEXIS 26140, *6 (D. Conn. September 9, 2002).

[2] Medvey's "Condition" was a defined term in defendant Oxford's Memorandum in Support at 2, 13-14.

2

Oxford's Memo in Support of Motion for Summary Judgment ("Oxford's Memo in Support") at 13-14; see also 56(a)1 Facts ¶ 14. In her Opposition Memo, however, Medvey attempts to interject additional injuries into this litigation. She now claims she had herniated disks in her neck. Plaintiff's Opposition Memo at 22. In order to include these alleged neck injuries as part of her Condition, Medvey relies on the report of her psychiatrist, Dr. Brown. See Plaintiff's Exhibit F, Dep. Ex. 4. Therein, Dr. Brown claims that Medvey has a "fifteen percent physical disability from herniated disks in her neck and soft tissue injury." Id.

Assuming that a psychiatrist is even capable of making such a diagnosis, this report is dated February 18, 2004, several years after Medvey ceased working for Oxford. There is absolutely no evidence that this report or the diagnosis regarding herniated disks was **ever** communicated to Oxford.[3] Therefore, this Court should not deem this valid evidence of Medvey's disability.

**B.     Medvey's Alleged Disability Has Not Impaired Any Major Life Activity.**

Medvey claims that her alleged disability impairs the major life activities of (1) caring for herself, (2) performing manual tasks, and (3) working. Plaintiff's Opposition Memo at 23. With regard to the major life activity of "caring for herself," Medvey offers as evidence the fact that she required the assistance of a housekeeper. Id. When asked about this during her deposition, Medvey stated that she could not remember how often she used the housekeeper. She herself did housework herself "when necessary ." Plaintiff's Ex. A, Medvey Dep. I, 30; see also 56(a)1

---

[3] In a footnote, Medvey claims that "[a]lthough ... Brown's letter ... was not available to Defendant during ... Medvey's employment, the information of it had been made available to Oxford during ... her employment." Plaintiff's Opposition Memo at 15, n.1. However, Medvey offers no evidence to support this statement.

3

Facts ¶ 82, 84. Certainly, this cannot form the basis for the impairment of the major life activity of "caring for oneself." See e.g. Mckay v. Toyota Motor Manufacturing, U.S.A., Inc., 878 F. Supp. 1012, 1015 (E. D. Ken. 1995), aff'd. 110 F. 3d 369 (6th Cir. 1997) ("[H]er condition does not substantially limit her ability to perform personal hygiene tasks or most household functions. . . . Merely being limited in the ability to perform housework such as mopping does not constitute a substantial limitation in the ability to care for oneself.")

Medvey offers nothing to rebut Oxford's evidence with regard to the major life activity of "performing manual tasks." See, e.g., Oxford's Memo in Support, 10-11. For that matter, Medvey does not deny Oxford's assertions[4] that she is able to drive 11,000 to 15,000 miles per year for her business needs, that she was able to take frequent vacations during the past several years, and that she has never been unemployed since leaving Oxford. Nor does she deny Oxford's evidence that her alleged "bouts where her seeing and hearing are diminished" are remediated by a prophylactic dose of valium, as needed.[5] Thus, the evidence submitted by Medvey cannot form a sufficient basis to satisfy her burden in responding to this Motion for Summary Judgment.[6]

With regard to Medvey's claim that her disability impairs the major life activity of "working," Medvey offers that she "accommodates in ways that are not necessarily evident – limiting her hours and working at a pace comfortable to her." Plaintiff's Opposition

---

[4] See Oxford's Memorandum in Support at 16-17; 56(a)1 Facts ¶¶ 56, 59-60, 66-80, 88-89.
[5] See Oxford's Memorandum in Support at 19; 56(a)1 Facts ¶ 98.
[6] Medvey implies that her use of Valium is her own personal attempt at remediation. ("Her condition may seem to respond to self medication ...." Plaintiff's Opposition Memo at 26.) In truth, the use of Valium was prescribed by her physician. 56(a)1 Facts ¶ 98.

4

Memorandum at 24-25. Other than that statement, she offers no evidence that the major activity of "working" is impaired. Id. To the contrary, Medvey states the following:

> Medvey is unable to perform, as indicated by Drs. Brown, Lesser and Rabinowitz, in the realm of moving multi-screen computer programs – not just any computer system operation .... While this precludes Medvey from certain classes of employment and positions at all employers, it does not preclude her from other employment positions at any employer.

Plaintiff's Brief at 25 (citations omitted.)

Thus, Medvey admits that she is not precluded from work in a broad class of positions, as required for a determination that an impairment substantially limits the major life activity of "working." Sutton v. United Airlines, Inc., 527 U.S. 471, 491, 119 S.Ct. 2139, 144 L.Ed. 2d 450 (1999).

For all the above reasons, Medvey's alleged disability does not substantially limit any major life activity.

**C.    Medvey's Alleged Disability Is Not "Substantially Limiting."**

Medvey claims that her alleged disability is "substantially limiting" "where driving, or riding as a passenger in an automobile is involved." Plaintiff's Opposition Memo at 25. In support, Medvey states that "on many occasions" she has been prevented from lengthy car trips. Plaintiff's Opposition Memo at 34 (citing Facts at 12, which in turn rely on Plaintiff's Ex. C., Medvey Dep. III, at 166).[7] In fact, when asked about this claim at her deposition, Medvey could only recall "a couple of times" when this occurred. Plaintiff's Ex. C, Medvey Dep. III, 166.

---

[7] Medvey also cited to her Facts at 6 in support of this assertion. Said Facts at 6 provide no such support.

Moreover, as stated above, Medvey does not dispute that she was able to drive 11,000 to 15,000 miles per year for her business needs. Nor has Medvey ever claimed that she was unable to work due to an inability to drive.

Medvey also claims that she suffers "diminished cognition and reduced concentration and reading and memory problems." Plaintiff's Opposition Memo at 26.[8] Medvey does not address Oxford's evidence to the contrary, for example, that her reading skills were excellent, that she had a 3.8 average at Norwalk Community College, etc. See Oxford's Memo in Support at 10-11. Instead, in support of this claim, Medvey offers only her own self-serving deposition testimony. Plaintiff Ex. D, Medvey Dep. IV, 56-57. In fact, the referenced deposition testimony is, in essence, the testimony of Medvey's attorney. Medvey simply answered yes to all of his leading questions. Id.

**D.   Oxford Did What Was Possible, In The Face Of Its Financial Difficulties, To Accommodate Medvey's Alleged Disabilities.**

Medvey does not deny Oxford's assertions that it made several attempts to accommodate her. Oxford's Memo in Support at 21-22. Moreover, she does not address the fact that Oxford was faced with downsizing that prevented other accommodations. Id. at 20-22; see also, id. at 7; Oxford's Ex. H, Orsaia Affidavit ¶¶ 9, 11; Oxford's Ex. M, Marlor Affidavit ¶ 7; 56(a)1 Facts ¶¶ 20-21.

**E.   Medvey Admits that She did Not Adequately Request Accommodation.**

---

[8] Here, Medvey cites to Plaintiff's Facts at 7 and 14. Page 7 provides no such support. Page 14 references the deposition testimony discussed above.

6

Medvey admits that "out of fear of losing employment opportunities, [she] did not request accommodations" from Oxford. Plaintiff's Opposition Memo at 5. Instead, she "at times covertly implemented self accommodations ...." Id. Thus, she must fail in her claim that Oxford did not provide reasonable accommodations that were not requested.

Similarly, with regard to her employment **after** Oxford, Medvey states that "her employment has always been supported with some form of accommodation for her disability." Plaintiff's Opposition Memo at 29. In fact, Medvey's subsequent employers submitted evidence stating that she did not request such accommodation. Oxford's Memo in Support at 9; 56(a)1 Facts ¶¶ 68-71, 75. The only "evidence" Medvey offers on this subject is her own statement that "she self accommodates in ways that are not necessarily evident ...." Plaintiff's Memo in Support at 24 (emphasis added).

F.  **Medvey Suffered No Adverse Employment Action.**

Medvey was not terminated by Oxford. Nevertheless, to support her allegation that she was terminated, Medvey offers a form letter from MedSoft Corporation, dated November 11, 1999, describing her rights to continuation of employee benefits under COBRA. However, Medvey herself admits that she received said letter only after she left Oxford and started her new job in real estate. Plaintiff's Opposition Memo at 18. Thus, Medvey offers nothing to counter Oxford's evidence that it never terminated Medvey, but that Medvey simply decided to pursue

7

employment with a different employer in a different industry and that such employment continued for several years following her leaving Oxford.[9] 56(a)1 Facts ¶¶ 56, 59-60, 66-80.

For all of the above reasons, and for the reasons included in Oxford's Memo in Support, Oxford respectfully requests that the Court grant its Motion for Summary Judgment with regard to Counts Five and Six, because Medvey was not disabled within the meaning of the Americans With Disabilities Act or the Rehabilitation Act.

## II.

## MEDVEY DOES NOT SUFFER A DISABILITY WITHIN THE MEANING OF CONNECTICUT GENERAL STATUTES SECTION 46a-51(15).

**A.    Medvey Does Not Have a Physical Handicap, Infirmity or Impairment.**

In her Opposition Memo, Medvey argues that her alleged Condition was chronic because it "lasted for years." This argument ignores the fact that even if the "sheer longevity" of a condition rendered it chronic, which it does not, a condition must still rise to the level of a "physical handicap, infirmity or impairment" to constitute a disability under the CFEPA. In fact, Medvey appears somewhat baffled by Oxford's reference to her consistently positive performance evaluations. To be clear, said evaluations provide support for Oxford's position, i.e., that Medvey did not have a "physical handicap, infirmity, or impairment."

A handicap is defined as "a deficiency...that prevents or restricts normal achievement." The American Heritage Dictionary of the English Language, at 598 (1981). Medvey's performance evaluations show that she surpassed normal achievement in her job performance.

---

[9] The fact that Medvey received a COBRA letter should not be considered evidence that Medvey was discharged. COBRA letters are sent to any employee who terminates employment. This applies to people who voluntarily terminate as well as people who are discharged. 29 U.S.C. § 1161 et seq.; Treasury Reg. § 59.4980B-4, Q. 2. Medvey applied for and received COBRA benefits. 56(a)1 Facts ¶ 65.

8

She was also praised by clients outside of Oxford for her performance. 56(a)1 Facts ¶¶ 17, 32-37.

Similarly, to impair is to "diminish capacity in some <u>material</u> respect." <u>Id</u>. at 659. As pointed out by Oxford, Medvey admitted that her Condition was brought on by Oxford's multi-screen computer program. Thus, her Condition would have been at its worst while Medvey was at work. Her job evaluations establish that even when her Condition was at its worst, i.e., in the workplace, her capacity was not diminished in any <u>material</u> respect. She was fully capable of performing her job. Finally, "infirm" is defined as "weak in body, especially from old age; feeble." <u>Id</u>. at 674. Even Medvey must concede that this does not apply to her.

It is simply not reasonable to conclude that whenever someone has a condition that may pose somewhat of an obstacle to her, she suffers from a disability within the meaning of the CFEPA. To so find would be to render practically every human being disabled, since most of us have to confront some type of ache or pain. <u>EEOC v. Sara Lee Corporation</u>, 237 F. 3d 349, 352 (4th Cir. 2001) (stating "[t]o hold that a person is disabled whenever that individual suffers from an occasional manifestation of an illness would expand the contours of the ADA beyond all bounds"). It is Medvey's individual situation that must be analyzed by this Court. <u>Conner v. McDonalds</u>, 2003 WL 1343259 (D. Conn. 2003).

Oxford refers to its Memo in Support with respect to all of the various activities in which Medvey participates, as well as information regarding her ability to work and to function generally. Oxford's Memo in Support at 10-11. While analyzing Medvey's individual situation, however, it should be noted that she can compensate for her alleged Condition by

9

avoiding overly busy days and by trying not to take on too much at one time. Id. at 11; 56(a)1 Facts ¶ 97. Moreover, she can alleviate her symptoms with a "prophylactic dose of Valium." 56(a)1 Facts ¶ 98. She is simply not disabled.

**B.    Medvey's Condition Is Not Chronic**

Medvey argues that her alleged Condition is chronic because it "lasted for years." This statement oversimplifies the issue. Assuming, arguendo, that her alleged Condition did "last for years," chronic is defined as "of long duration or characterized by slowly progressive symptoms; deepseated or obstinate or threatening a long continuance, distinguished from acute." Black's Law Dictionary at 241-42 (6th ed. 1990). Thus, Medvey still has to show that her Condition was distinguishable from "acute" in order to claim it was chronic. Even Hippocrates, whose definition Medvey asks this Court to adopt, "distinguished diseases that were acute (abrupt, sharp and brief) from those that were chronic." Plaintiff's Opposition Memo at 33.

Medvey testified that her allegedly disabling symptoms were brought on as a reaction to outside forces and that her symptoms were almost like "attacks." She noted that "[t]hey don't happen all the time." Oxford's Memo in Support at 11; 56(a)1 Facts ¶¶ 91-92. Obviously, then, she experienced abrupt, brief symptomatic periods. Moreover, Medvey's symptoms have not "lasted for years" but have occurred on occasion throughout the years. Thus, her Condition is "acute" as distinguished from "chronic."

Medvey disputes Oxford's assertion that her alleged Condition was not "inveterate" by claiming that there is no "cure" for Medvey's Condition. "Inveterate" is defined as "resistant to treatment." Caruso v. Siemens Business Systs., Inc., 2003 WL 174791, *1, n (2d Cir. (Conn.) Jan.

10

23, 2003) (citing Oxford English Dictionary (2d ed. 1989). It is not defined as "resistant to cure." By Medvey's own admission, a "prophylactic dose of Valium" alleviates her symptoms. As stated above, Medvey can compensate for her alleged Condition by avoiding overly busy days and by trying not to take on too much at one time. Thus, it is perfectly treatable.

Despite these admissions, Medvey states in her brief that "[w]hether Medvey's Condition responds to treatment is clearly in doubt." Plaintiff's Opposition Memo at 35. However, she provides absolutely no support for this statement and does not deny Oxford's assertion to the contrary concerning successful treatment with Valium. "If she does not suffer these conditions when she is on her medication and she is able to take her medication such that she is not chronically handicapped, infirmed, or impaired, then she would not be actually disabled under Conn. Gen. Stat. § 46a-60(a)(1)." Shaw v. Greenwich Anesthesiology Assoc., 137 F. Supp. 2d at 66, n. 22.

C.  **After Informing Oxford Of Her Disability, Medvey Was Not Rejected For Any Existing Position At Oxford**

In order for Medvey to prevail on this portion of her claim under the applicable McDonnell Douglas-Burdine model, she must show that a suitable vacancy existed into which she might have been transferred. Irby v. New York City Transit Authority, 2000 WL 1634413, *3 (S.D.N.Y. Oct. 30, 2000). Medvey must establish that she applied for the position for which she claims she was qualified. She must also establish that she was rejected. Gambardella v. Yale University, 2003 WL 22133747, *3 (Conn. Super. Ct. Aug. 27, 2003). "[A] plaintiff who did not apply for a position...ordinarily cannot establish a *prima facie* case of discrimination." Id.

11

Medvey claims that that she was told an open 'runner position' was not made available to her. Plaintiff's Opposition Memo at 10 (citing Plaintiff Ex. A, Medvey Dep. I, at 56). In fact, there was no "open" runner position. Medvey's testimony was that she inquired into a runner position, but was told that the position was filled. Id. Thus, it was not a vacant position. Moreover, Medvey claims she offered to "take anything including receptionist work at reduced hours and reduced pay." Plaintiff's Opposition Memo at 10. However, Medvey's willingness to take work simply does not satisfy her burden of showing that a suitable vacancy existed and that she applied for it. Oxford was not required to create a receptionist, or any other position, for Medvey. See also Oxford's 56(a)1 Facts ¶¶ 44-54.

**D.    Medvey Suffered No Adverse Employment Decision.**

Oxford relies upon, and will not repeat here, its arguments supra at I(F), as well as its arguments in Oxford's Memo in Support on this subject. Id. at II(E).

**E.    There Are No Circumstances Here That Can Give Rise to A Reasonable Inference of Discrimination.**

Oxford relies upon, and will not repeat here, its arguments in Oxford's Memo in Support on this subject. Id. at 28. Medvey provides no support in her Memo for any different conclusion.

**F.    Oxford Was In The Midst Of Financial Crises, Hiring Freezes and Downsizing.**

Oxford relies upon, and will not repeat here, its arguments in Oxford's Memo in Support on this subject. Id. at 29.

Oxford notes, however, that Medvey ignores the evidence on this point. She claims that Oxford "never offers any proof that Oxford was in fact downsizing." Plaintiff's Opposition Memo at 37. In fact, Oxford submitted two affidavits that clearly support its statements with regard to downsizing. Oxford's Memo in Support at 7 (citing Ex. H, Orsaia Affidavit; Ex. I, Marlor Affidavit). Indeed, Medvey admitted this herself during her deposition. Oxford Memo of Support at 4, n. 2; see also 56(a)1 Facts ¶¶ 20-21. Medvey questions the veracity of Oxford's downsizing claim by citing to the fact that Oxford sent her 64 job postings between July 5 and September 7, 2001. Plaintiff's Opposition Memo at 37. However, this was 2 ½ years after Medvey left Oxford for a career in real estate. Medvey provides no evidence to rebut Oxford's downsizing during the relevant period, i.e., during the course of Medvey's employment with Oxford.

G.     **Medvey Cannot Show That the Reason Articulated By Oxford Is Pretextual.**

Again, Oxford relies upon, and will not repeat here, its arguments in Oxford's Memo in Support on this subject. Id. at 29.

Oxford notes again, however, that Medvey has provided no evidence to rebut the fact that Oxford was downsizing and hiring freezes were in effect during the relevant period. Medvey states that "[t]wo years after her last day of actual work, Oxford sent Medvey numerous job postings for job interview purposes. ... the sheer number of open positions ... negates Oxford's attempt to argue its reasoning for terminating Medvey was anything but, pretextual." Plaintiff's Opposition Memo at 38. This reasoning is severely flawed. Oxford's actions 2 ½ years

following Medvey's decision to pursue a career outside Oxford is not evidence bearing on whether there was downsizing 2 ½ years earlier.

For all of the above reasons, and for the reasons included in Oxford's Memo in Support, Oxford respectfully requests that the Court grant its Motion for Summary Judgment with regard to Count Four of Medvey's claim under the Connecticut Fair Employment Practices Act.

### III.

### MEDVEY HAS FAILED TO MEET HER BURDEN WITH REGARD TO PROOF NECESSARY TO <u>SUSTAIN HER CLAIM OF RETALIATION</u>

**A.   Medvey Engaged in No Protected Activity Under the ADA**

In Section VI(A) of her brief, Medvey claims that she was engaged in protected activity under the ADA when she sought reasonable accommodation for her alleged disability. Plaintiff's Opposition Memo at 39-40. Clearly, this is not the type of activity that constitutes a "protected activity" under the ADA. Requesting reasonable accommodation does not constitute a **protest** of an "unlawful employment practice."[10] Indeed, requesting reasonable accommodation does not represent any sort of "protest," and Medvey offers no legal support for any opposite interpretation.

**B.   Medvey Suffered No Adverse Employment Action**

As noted above in Section I(F) of this Memo, and in Oxford's Memo in Support at 27-28, Medvey suffered no adverse employment action. Therefore, another element necessary for a

---

[10] This issue is discussed at length in Oxford's Memo in Support at 31-32.

14

claim of retaliation under the ADA is lacking and remains unaddressed by Medvey's Opposition Memo.

### C. There Is No Causal Link Between a Protected Activity and an Adverse Employment Action

In Section VI(C) of her Opposition Memo, Medvey briefly contends that her attempts to seek accommodation followed by her "abrupt termination" constitutes the necessary link between a protected activity and an adverse employment action. Since requesting reasonable accommodation does not constitute a protected activity, and since Medvey was not terminated by Oxford (see arguments A and B above), the causal link required for a retaliation claim cannot be proven by Medvey.

For all of the above reasons, and for the reasons included in Oxford's Memo in Support, Oxford respectfully requests that the Court grant its motion for summary judgment with regard to Count VII because Medvey has offered no evidence that would support a claim of retaliation.

15

## **CONCLUSION**

For all of the above reasons, and for the reasons included in Defendants' Memorandum in Support of their Motion for Summary Judgment dated September 15, 2004, the defendant respectfully requests that the Court grant its Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.

                                **DEFENDANT,**
                                OXFORD HEALTH PLANS, INC.

By: _____
David A. Kulle (ct00333)
dkulle@rc.com
David J. Burke (ct04373)
dburke@.rc.com
Diane Bucci
dbucci@rc.com
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
Tel No.: (860) 275-8200
Fax No.: (860) 275-8299

16

## CERTIFICATION

This is to certify that a copy of the foregoing was sent via first class mail, postage prepaid, to Edmond Clark, Esq., 83 Scotland Avenue, Madison, Connecticut 06443-0133, on March 14, 2005.

_____
David J. Burke